UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MD MATIWAR RAHMAN,

        Plaintiff ,

  -against-

W & A DISTRIBUTION SERVICES, INC.
and JAMES INDA,

        Defendants.
----------------------------------------------------------X

O R D E R
05 CV 2288 (CPS)(RML)

LEVY, United States Magistrate Judge:

Defendants W & A Distribution Services, Inc. ("W & A"), and James Inda ("defendants") move to preclude plaintiff Md Matiwar Rahman's ("plaintiff" or "Rahman") expert economist, Alan Leiken, Ph.D., as untimely. For the reasons explained below, the motion is denied.

**BACKGROUND AND FACTS**

Plaintiff alleges that, on April 4, 2005, he was working on the loading dock of Reilly Partitions, Inc., when a truck and trailer owned by W & A and driven by Inda negligently struck a security gate. (Complaint, dated Apr. 20, 2005 ("Compl."), ¶¶ 11-12.) According to plaintiff, the security gate "ripped the trailer's door off and caused . . . [the] door to collapse and strike the plaintiff." (Id. ¶ 12.) Plaintiff filed suit shortly thereafter, alleging various injuries, including a fractured left forearm,[1] a torn meniscus, neck and back pain, lacerations and various

---

[1] In subsequent correspondence to the court, plaintiff's counsel also describes this injury as a wrist fracture. (See Plaintiff's Opposition to Defendant's Motion to Preclude Expert, dated Jan. 31, 2008 ("Pl.'s Opp."), at 1.) However, for purposes of this Order, the distinction is of no consequence.

other conditions. (Id. ¶ 18.) As this lawsuit proceeded, plaintiff continued to seek treatment for his injuries, and in 2007 an MRI examination of his cervical spine revealed a large herniated disc at C4-C5. (Narrative Report of Ramesh P. Babu, M.D., dated Dec. 14, 2007 and attached as Ex. A to the Letter of Jeffrey A. Segal, Esq., dated Feb. 7, 2008.) When pain management proved unsuccessful, Dr. Babu performed a "C4-5 partial vertebrectomy, discectomy, interbody fusion, and plating and instrumentation by using Zephir plate" ("discectomy") on September 6, 2007. (Id.) Following the surgery, Dr. Babu re-evaluated plaintiff's condition and concluded that his prognosis was "guarded" and his injuries were "permanent." Dr Babu noted that plaintiff walks with a cane and will "need[ ], for the rest of his life, to have physician care, pain medications, physical therapy, and massage therapy to alleviate his permanent pain." (Id.)

Although a discovery schedule was entered at the initial conference on October 25, 2005, various discovery deadlines have since been extended at the parties' request because of the evolving nature of plaintiff's treatment and injuries. For example, on September 7, 2007, the day after plaintiff's discectomy, both parties agreed to extend the deadline for plaintiff's expert disclosure to December 14, 2007. Then, on December 14, 2007, I granted the parties' request to extend that deadline to January 15, 2008. Plaintiff's counsel, Arkady Frekhtman, was unavailable for the December 14 conference, and an associate appeared in his stead. At the conference, however, the associate indicated that only a medical expert report would be forthcoming.

Shortly after the December 14, 2007 conference, plaintiff served the expert report of Dr. Leiken, an economist. Defendant objected, arguing that expert discovery was closed except for medical discovery relating to plaintiff's discectomy. Plaintiff responded that the

December 14 extension applied to all expert reports relating to plaintiff's discectomy and that the need for an economist was directly related to the discectomy. Prior to the surgery, he said, plaintiff anticipated that he would recover sufficiently from his injuries to return to his old job in a "few years."[2] (Pl.'s Opp. at 4.) Plaintiff's counsel explained that, "[c]onsidering plaintiff's relatively modest salary of approximately $25,000 per year, our office did not retain an economist because we understood plaintiff would return to work and lose only 2-3 years of earnings." (Id. at 3-4.) The discectomy, however, changed the analysis, as it soon became clear that plaintiff "will never return to work because his job involves very physical labor that he simply is unable to do. Therefore the economic damages were a consequence of . . .the cervical discectomy, which was the reason discovery was reopened in this matter." (Id. at 4-5.) At a conference held on January 25, 2008, I set a briefing schedule for the motion to preclude and asked plaintiff to submit an affidavit from his employer explaining the effect of the discectomy on plaintiff's future earnings and hence his need for an expert economist.

## DISCUSSION

The simple issue before the court is whether the extension of the expert discovery deadline following plaintiff's discectomy was limited to expert medical reports. In essence, defendants' objections boil down to three arguments. First, they note that the December 14, 2007 minute entry describing the discovery extension expressly mentioned only "Plaintiff's supplemental medical expert report" regarding his surgery. (Order of Robert M. Levy, dated

---

[2] As plaintiff explained in his opposition: "It is important to note that plaintiff's initial injury was a cervical herniated disc from which he expected to recuperate after physical therapy and rehab. He therefore expected to work. . . . His employer . . . made it clear that he would welcome the plaintiff back to work when he felt better. . .which was estimated to be within a few years of the accident." (Pl.'s Opp. at 3.)

Dec. 14, 2007.) Moreover, Mr. Frekhtman's associate who appeared at the December 14, 2007 conference made no mention of an economist in requesting the extension. Defendants are technically correct on both points. However, I extended discovery to permit expert consideration of plaintiff's recent cervical surgery and its consequences. Although surgery is by definition a medical procedure, it may also have an impact on other aspects of plaintiff's life, such as his financial and emotional well-being. To limit post-surgery disclosure to medical experts would be both unfair and unreasonable. Plaintiff is entitled to show not only the medical results of his surgery, but the effects he believes it will have on his employability and earning potential.[3]

Second, defendants argue that there is no good cause to re-open expert discovery for an economist because, even before the surgery, plaintiff had alleged that he was totally disabled as a result of the accident. Thus, according to defendants, the discectomy changed nothing. As explained above, plaintiff sharply disagrees and in support of his position submitted a "Witness Statement," signed by plaintiff and his employer, stating that, until the discectomy, his employer continued to hold his old job open for him. (See Witness Statement, attached to Pl.'s Opp.) Defendants dismiss the Witness Statement as unsworn and contradictory. However, this is discovery, and it is not the Court's role to hold a mini-trial on credibility at this stage of

---

[3] It is true that plaintiff's counsel did not mention at the December 14 conference that he was planning to serve an economist's report. Apparently, the associate covering the conference in Mr. Frekhtman's absence was either unaware of the report or neglected to do so. As a result both the court and defendants' counsel believed that plaintiff was submitting only a medical report. However, this lapse is not fatal. Had plaintiff explicitly requested an extension to serve an economist's report, I would have found good cause and granted the motion over defendants' objection. His failure to do so was harmless, as only a short time elapsed before the production of Dr. Leiken's report. Any prejudice to defendants can be addressed by a brief extension of discovery.

the case.  That is best left to the trier of fact.  I agree that the Witness Statement describing the change in plaintiff's ability to return to work should be sworn as well as signed.  Thus, I will afford plaintiff's counsel until March 14, 2007 to submit a sworn, notarized Witness Statement.  If he does so, plaintiff will have submitted sufficient evidence to demonstrate, for purposes of this relatively simple discovery ruling, that the need for the economist arose after the discectomy.

Finally, defendants point to the transcript of a hearing held before Judge Sifton on May 22, 2007, which they believe clearly states that discovery was reopened solely to allow plaintiff to serve Dr. Babu's expert medical report.  I disagree.  Overruling defendants' objections, Judge Sifton explicitly found at the hearing that there was good cause to extend discovery, because the injury had only recently progressed to a stage where surgery was required.  (Transcript of Hearing before the Honorable Charles P. Sifton, dated May 22, 2007, at 10).  Although the scope of expert discovery was not addressed at the hearing, Judge Sifton in no way limited the discovery extension to expert medical reports.  He simply recognized that the surgery would necessitate additional expert discovery.  The decision to permit an expert economist is not inconsistent with that ruling.

In making this ruling, I find that the potential prejudice to plaintiff from precluding his expert economist would outweigh any corresponding prejudice to the defendants.[4]

## CONCLUSION

For the reasons explained above, defendants' motion to preclude plaintiff's expert

---

[4] I further find there is no need for oral argument, as this issue has been fully briefed and argued at length, most recently at the January 25, 2008 conference.

economist is denied, provided that plaintiff submit a sworn, notarized Witness Statement by March 14, 2008. Defendants have leave to seek an extension of the discovery deadline to present their own expert economist.

SO ORDERED.

Dated: Brooklyn, New York
February 28, 2008

/s/
ROBERT M. LEVY
United States Magistrate Judge